

**ORDERED in the Southern District of Florida on October 28, 2009.**

Erik P. Kimball, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | CASE NO.: 08-15510-EPK |
| JOHN E. LEONARD, | CHAPTER 7 |
| Debtor. | |
| _____/ | |
| DEBORAH C. MENOTTE, Trustee in Bankruptcy for John E. Leonard, | ADV. NO.: 08-01557-EPK |
| Plaintiff, | |
| v. | |
| CATHY J. LEONARD and MACON BANK, INC., | |
| Defendants. | |
| _____/ | |

**ORDER GRANTING TRUSTEE'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST DEFENDANT CATHY J. LEONARD [DE 92]**

This cause came before the Court upon the *Trustee's Motion for Partial Summary
Judgment Against Defendant Cathy J. Leonard* [DE 92] (the "Motion") filed by Deborah C.

1

Menotte, Trustee in Bankruptcy for John E. Leonard (the "Trustee"). The Court has considered the Motion, the *Defendant, Cathy J. Leonard's, Response in Opposition to the Plaintiff's Motion for [P]artial Summary Judgment* [DE 101] (the "Response"), and the *Plaintiff, Deborah C. Menotte's Reply to Defendant, Cathy J. Leonard's, Response in Opposition to Plaintiff's Motion for Partial Summary Judgment* [DE 115] (the "Reply"), and is otherwise fully advised in the premises.

I.    Procedural and Factual Background

Cathy J. Leonard ("Ms. Leonard") and her husband, John E. Leonard (the "Debtor"), owned in joint tenancy real property located at 191 Sugarfork Road, Franklin, North Carolina 28734 (the "North Carolina Property"). On February 7, 2008, the Debtor executed a quitclaim deed, transferring his one-half interest in the North Carolina Property to Ms. Leonard, making Ms. Leonard the sole owner of the North Carolina Property. On February 19, 2008, the quitclaim deed was recorded in the official records of Macon County, North Carolina.

On April 30, 2008 (the "Petition Date"), the Debtor filed a petition commencing a chapter 7 case in this Court. [08-15510-EPK, DE 1.] The Debtor did not list in his Statement of Financial Affairs the pre-petition transfer of his one-half interest in the North Carolina Property to Ms. Leonard. [08-15510-EPK, DE 1.] The Trustee filed an adversary complaint against the Debtor, objecting to his discharge pursuant to 11 U.S.C. § 727. [08-01561-EPK, DE 1.] After an evidentiary hearing, on May 18, 2009 the Court entered Final Judgment in favor of the Trustee denying the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(4)(A). [08-01561-EPK, DE 83.]

On August 18, 2008, Ms. Leonard entered into a home equity line of credit agreement with, and gave a Deed of Trust on the North Carolina Property to, Defendant Macon Bank, Inc. ("Macon Bank").

On September 2, 2008, the Trustee filed this adversary proceeding to avoid and recover fraudulent and/or preferential transfers and for authority to sell the North Carolina Property.  [DE 1.]  On March 10, 2009, the Trustee filed her *Trustee's Amended Complaint to Avoid and Recover Fraudulent and/or Preferential Transfers Pursuant to 11 U.S.C. § 547 and 548, to Determine Validity, Priority, and Amount of Interest in Real Property, to Quiet Title Pursuant to § 41-10 North Carolina General Statutes, for Declaratory Relief Pursuant to Bankruptcy Rules 7001(2)(7)&(9), to Sell Real Property Pursuant to U.S.C. § 363(h) and for Sale in Lieu of Partition Pursuant to § 46-22 North Carolina General Statutes* [DE 45] (the "Amended Complaint").  By the Amended Complaint, among other things, the Trustee added Macon Bank as a defendant to this adversary proceeding.

The Motion seeks summary judgment in favor of the Trustee on Count I (fraudulent transfer pursuant to 11 U.S.C. § 548), Count V (sale in lieu of partition pursuant to § 46-22 North Carolina General Statutes), and Count VI (sale of jointly held real property pursuant to 11 U.S.C. § 363(h)).

II.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate if the Court determines that the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "An issue of

fact is 'material' if it is a legal element of the claim under the applicable substantive law which

might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.

1997).  In considering a motion for summary judgment, the Court must construe all facts and

draw all reasonable inferences in the light most favorable to the non-moving party.  *HCA Health

Services of Ga., Inc. v. Employers Health Ins. Co.,* 240 F.3d 982, 991 (11th Cir. 2001).

The moving party has the burden of establishing that there is an absence of any genuine

issue of material fact. *Celotex,* 477 U.S. at 323.  "[O]nce the moving party has met that burden

by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial,

Federal Rule of Civil Procedure 56(e) shifts to the non-moving party the burden of presenting

specific facts showing that such contradiction is possible." *Walker v. Darby*, 911 F.2d 1573,

1576 (11th Cir. 1990) (citation omitted).  "A mere 'scintilla' of evidence supporting the opposing

party's position will not suffice; there must be enough of a showing that the jury could

reasonably find for that party." *Id.* (*citing Anderson*, 477 U.S. at 252).

III.    Analysis

    a.    *Count I – Fraudulent Transfer Pursuant to 11 U.S.C. § 548*

The Trustee seeks to avoid the transfer of the Debtor's one-half interest in the North

Carolina Property to Ms. Leonard.  The Trustee alleges that the transfer was fraudulent pursuant

to 11 U.S.C. § 548(a)(1)(B) or, alternatively, pursuant to 11 U.S.C. § 548(a)(1)(A).  Section

548(a)(1) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may avoid any transfer . . . of an interest of the debtor in property or
> any obligation . . . incurred by the debtor, that was made or incurred on or within
> 2 years before the date of the filing of the petition, if the debtor voluntarily or
> involuntarily –

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

  (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a)(1).  "In fraudulent conveyance actions, the trustee has the burden of proof on all issues."  *Henkel v. Green (In re Green),* 268 B.R. 628, 650 (Bankr. M.D. Fla. 2001).

  1.    Section 548(a)(1)(B)

"In order to avoid a transfer under § 548(a)(1)(B), the Trustee must show that: (i) there was a transfer of an interest of the Debtor in property; (ii) the transfer occurred within two years preceding the petition date; (iii) the Debtor received less than reasonably equivalent value in exchange for the transfer; and (iv) the Debtor was either insolvent on the date of the transfer or became insolvent as a result of the transfer." *Bakst v. Clarkston (In re Clarkston),* 387 B.R. 882, 888 (Bankr. S.D. Fla. 2008) (citations omitted).

The parties do not dispute that the Debtor transferred his one-half interest in the North Carolina Property to Ms. Leonard or that this transfer to Ms. Leonard occurred within two years preceding the Petition Date.  Thus, the first two requirements of section 548(a)(1)(B) are satisfied.

Ms. Leonard argues that there is a genuine issue of material fact as to whether the subject transfer occurred on February 7, 2008 or on February 19, 2008, and claims that this precludes the entry of summary judgment.  For purposes of section 548,

  a transfer is made when such transfer is so perfected that a bona fide purchaser
  from the debtor against whom applicable law permits such transfer to be perfected
  cannot acquire an interest in the property transferred that is superior to the interest
  in such property of the transferee, but if such transfer is not so perfected before

5

the commencement of the case, such transfer is made immediately before the date
of the filing of the petition.

11 U.S.C. § 548(d)(1).  The Court looks to applicable state law to determine what is required to
so perfect an interest in property.  *Cohen v. Bellamy (In re Shannis)*, 229 B.R. 234, 237 (Bankr.
M.D. Fla. 1999).  Under North Carolina law, a transfer is perfected upon recordation.  N.C. Gen.
Stat. § 47-18 (2009).  Here, the quitclaim deed from the Debtor to Ms. Leonard was recorded in
the county records on February 19, 2008.  Accordingly, for purposes of section 548 the date of
transfer of the Debtor's one-half interest in the North Carolina Property to Ms. Leonard was
February 19, 2008.

    The third requirement of section 548(a)(1)(B) is that the Debtor received less than
reasonably equivalent value in exchange for the transfer.  *(In re Clarkston)*, 387 B.R. at 888.
"By its terms and application, the concept of "reasonably equivalent value" does not demand a
precise dollar-for-dollar exchange."  *Advanced Telecomm. Network, Inc. v. Allen (In re
Advanced Telecomm. Network, Inc.)*, 490 F.3d 1325, 1336 (11th Cir. 2007).  "The determination
of reasonably equivalent value should be made on a case by case basis."  *In re Clarkston*, 387
B.R. at 888 (citation omitted).

    In addition to the North Carolina Property, the Debtor and Ms. Leonard jointly owned
property located at 2421 Waikiki Street, Port Saint Lucie, Florida (the "Florida Property").  As
discussed above, the Debtor transferred his one-half interest in the North Carolina Property to
Ms. Leonard on February 19, 2008.  Thirteen days later, on March 3, 2008, Ms. Leonard
transferred her one-half interest in the Florida Property to the Debtor.  [Ms. Leonard Dep. Ex. 2,
Feb. 16, 2009.][1]  As a result of these transfers, the Debtor became the sole owner of the Florida

---

[1] The Warranty Deed from Ms. Leonard to the Debtor, transferring her one-half interest in the Florida Property, was
recorded on March 3, 2008.  Under Florida law, a real property transfer is effective against subsequent purchasers
for value and creditors upon recordation.  Fla. Stat. § 695.01 (2009).  The Warranty Deed is dated February 19,

Property and Ms. Leonard became the sole owner of the North Carolina Property.  Ms. Leonard argues that the exchange of her interest in the Florida Property for the Debtor's interest in the North Carolina Property constitutes reasonably equivalent value for purposes of section 548.

In response, the Trustee argues that the two real property transfers were not simultaneous and that there is no written evidence of the parties' intent to exchange the property interests.  In general, "consideration paid after the transfer should not be considered in determining reasonable equivalent value <u>unless it was part of the original agreement</u>."  *In re Clarkson*, 387 B.R. at 888 (emphasis added).  Ms. Leonard testified that she and the Debtor agreed in February 2008 to exchange their respective property interests.  [Ms. Leonard Dep. 25:21-26:2.]  The Debtor and Ms. Leonard then completed the two transfers within, at most, a two week period.  Ms. Leonard's un-contradicted deposition testimony supports the conclusion that she and the Debtor agreed to exchange the two real property interests and then accomplished the exchange within a reasonable period.  Neither the lack of a written agreement nor the short span of time between the first and second transfers is fatal to this analysis.

The Trustee also argues that, even if the exchange of property interests was pursuant to agreement and sufficiently contemporaneous, the value received by the Debtor was not reasonably equivalent to the value transferred by the Debtor to Ms. Leonard.  The Trustee argues that the Debtor gave up a one-half interest in the unencumbered North Carolina Property then worth $112,000; therefore, the Debtor gave value of $56,000.  In return, the Debtor received a

---

2008.  It is possible that Ms. Leonard delivered the Warranty Deed to the Debtor prior to March 3, 2008, and the Court could consider this earlier date for purposes of "reasonably equivalent value" analysis.  This could result in a shorter span of time between the transfers of the North Carolina Property and the Florida Property.  Section 548(d)(1), quoted above, determines the timing of the transfer that is the subject of the avoidance action itself.  While instructive, there is nothing in section 548(d)(1) or elsewhere in section 548 requiring the Court to apply the provisions of section 548(d)(1) in the context of determining whether the Debtor received reasonably equivalent value.  Application of section 548(d)(1) to the transfer affecting the Florida Property results in a more conservative analysis by potentially lengthening the time period between the two transfers.  Even so, at most the transfers occurred thirteen (13) days apart.

one-half interest in the Florida Property, which had a net value of only $36,500; therefore, the Debtor received value of $18,250.  Thus, the Trustee argues, the Debtor obtained only about a third of what he gave and this does not constitute "reasonably equivalent value."

To establish the value of the Florida Property, the Trustee points to the value assigned to the Florida Property by the Debtor in his Schedules—$245,500—and notes that there exists on the Florida Property a secured claim in the amount of $209,000.  [Case No. 08-15510-EPK, DE 1.]  This results in a net equity of $36,500 in the Florida Property.  Based on these figures, the Trustee argues that by transferring her one-half interest to the Debtor, Ms. Leonard gave the Debtor $18,250 of equity in the Florida Property.

There are two hurdles to overcome in this analysis.  First, it appears that the scheduled secured claim on the Florida Property arose from a mortgage placed on the Florida Property near the time of the subject transfers.  [Ms. Leonard Dep. Ex. 3.]  This raises a question as to whether the Florida Property was unencumbered at the time Ms. Leonard transferred her interest in the Florida Property to the Debtor, thus materially increasing the value given by Ms. Leonard to the Debtor.  The uncontroverted evidence does not support this conclusion.  The Debtor testified in an examination under Bankruptcy Rule 2004[2] that the mortgage shown in his Schedules was

---

[2] The Trustee submitted with her Motion the transcript of an examination of the Debtor under Bankruptcy Rule 2004.  In her Response, Ms. Leonard argues that this transcript cannot be used against her because she did not receive notice of the taking of the examination.  This is not surprising, as the examination under Bankruptcy Rule 2004 was taken August 27, 2008 and the Trustee filed the instant adversary proceeding on September 2, 2008.  Under the facts presented, it may not be proper to admit the transcript as a deposition under Fed. R. Civ. P. 56(c).  However, the Bankruptcy Rule 2004 examination of the Debtor satisfies the requirements for a Rule 56(c) affidavit as it was "made on personal knowledge and set forth facts in evidence."  *Curnow v. Ridgecrest Police*, 952 F.2d 321, 324 (9th Cir. 1991) (*citing Hoover v. Switlik Parachute Co.*, 663 F.2d 964 (9th Cir. 1981)); *see also Tingey v. Radionics,* 193 Fed. Appx. 747, 765-66 (10th Cir. 2006) (permitting the use of a deposition as an affidavit at the summary judgment stage against a defendant who had no notice of its taking).  The Eleventh Circuit's *Nippon Credit Bank, Ltd. v. Matthews* case is not to the contrary.  *See* 291 F.3d 738, 750-51 (11th Cir. 2002) (finding that the particular depositions in that case satisfied the more stringent requirements of both Fed. R. Civ. P. 32(a) and Fed. R. Evid. 804(b)(1), and thus not addressing whether the depositions could be treated as affidavits in support of a summary judgment motion).  Thus, the transcript of the Bankruptcy Rule 2004 examination of the Debtor will be considered as an affidavit at this stage of the proceedings.  The Court expresses no opinion concerning the use of the examination transcript for other purposes in this case.

given in connection with a transaction used to refinance two prior liens on the Florida Property.
[Mr. Leonard Dep. 48:14-49:17, Aug. 27, 2008.]  The Debtor testified that he did not receive any
money from the refinance over and above what was necessary to pay off the two prior liens.
[Mr. Leonard Dep. 49:18-20.]  Thus, the amount of debt secured by the Florida Property did not
change as a result of the refinance transaction and the Court may rely on the scheduled secured
debt for purposes of calculating equity in the Florida Property.

      Second, the Debtor's Schedules state a value for the Florida Property as of the
commencement of this case on April 30, 2008.  The relevant date for valuation of the Florida
Property is the date of the transfer in question, February 19, 2008, about ten (10) weeks earlier.
This raises the question whether the Florida Property was worth materially more at the time of
the transfer, thus narrowing the gap for reasonably equivalent value analysis.  The Debtor's
Schedules show a net equity in the Florida Property of $36,500 as of the Petition Date.
Assuming an unencumbered value of $112,000 for the North Carolina Property as of the date of
its transfer (see below), there was a difference of $75,500 in total net equity between the two
properties.  It is unlikely that the value of the Florida Property depreciated to the extent of
$75,500 during the short span of about two and one-half months between the date of the transfer
and the Petition Date in this case.  Such depreciation would amount to a loss in value of about
23.5% during the relevant period.[3]  Even in the present market, it is not reasonable to believe that
the Florida Property depreciated by such a large percentage in only ten (10) weeks.  Ms. Leonard
offered no evidence to the contrary.  Consequently, the Court concludes that as of March 3, 2009
the Florida Property had a value of $245,500, encumbered by liens in the amount of $209,000,

---

[3] For the exchange in property interests to have the same value on each side, the Florida Property would have had to
have a value as of March 3, 2008 of $245,500 plus $75,500, or $321,000.  The scheduled value for the Florida
Property, $245,500, is approximately 23.5% less than $321,000.

with a net equity of $36,500.   The transfer of Ms. Leonard's one-half interest in the Florida Property to the Debtor had a value of $18,250.

To establish the value of the North Carolina Property at the time of transfer, the Trustee submits an affidavit of an expert appraiser, with an appraisal report, stating a value as of the date of transfer of $112,000.  [08-01557-EPK, DE 63; Duvall Aff., Aug. 5, 2009.]  Ms. Leonard pointed to no contrary evidence in her Response.[4]  The Court concludes that transfer of the Debtor's one-half interest in the North Carolina Property to Ms. Leonard had a value of $56,000.

In sum, the Court finds that in the exchange of the Debtor's one-half interest in the North Carolina Property for Ms. Leonard's one-half interest in the Florida Property, the Debtor gave value of $56,000 and received value of $18,250.  The Court finds that the Debtor did not receive reasonably equivalent value, thus satisfying the third requirement of section 548(a)(1)(B).

Finally, the fourth requirement for a section 548(a)(1)(B) claim is that "the Debtor was either insolvent on the date of the transfer or became insolvent as a result of the transfer."  *In re Clarkston,* 387 B.R. at 888.  The term "insolvent" means—

> (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of--
> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> (ii) property that may be exempted from property of the estate under section 522 of this title.

---

[4] Ms. Leonard did not cite to her deposition testimony on this issue.  However, the Court notes that Ms. Leonard testified in her deposition that the North Carolina Property had a value of "seventy something" in February 2008. [Ms. Leonard Dep. 32:16.]  Assuming a value of $70,000 for the North Carolina Property, the transfer of the Debtor's one-half interest would be worth $35,000.  This value is still materially greater than the value received by the Debtor as a result of Ms. Leonard's transfer of her one-half interest in the Florida Property, which was worth $18,250.  Thus, even if the Court were to rely on Ms. Leonard's testimony as to the value of the North Carolina Property, the Debtor did not receive reasonably equivalent value in the exchange.

11 U.S.C. § 101(32). "Thus, the balance sheet test is used under which a debtor will be declared insolvent if its debts exceed its assets (exclusive of exempt and fraudulently transferred assets)." *Taylor v. Riverside-Franklin Prop. (In re Taylor),* 228 B.R. 491, 502 (Bankr. M.D. Ga. 1998).

An attempt to demonstrate a debtor's financial condition at a prior date by reference to the debtor's financial condition as presented in his bankruptcy schedules has been referred to as the theory of "retrojection." *Enterprise Nat'l Bank of Atlanta v. Jones (In re Jones)*, 197 B.R. 949, 957 (Bankr. M.D. Ga. 1996) (citation omitted). "Where a debtor is shown to be insolvent at a date later than the date of the questioned transfer, and it is shown that the debtor's financial condition did not change during the interim period, insolvency at the prior time may be inferred from the actual insolvency at the later date." *Id.* (quotation omitted).

The Trustee points to the Debtor's Schedules which reflect total assets of $276,380.00 and total liabilities of $456,955.69 on the Petition Date. [Case No. 08-15510-EPK, DE 1.] The parties stipulated that the Debtor's liabilities exceeded his total assets by $180,575.69 on the Petition Date. [Joint Stip. of Facts ¶ 8.] The Debtor admitted in his examination under Bankruptcy Rule 2004 that he was unable to pay his bills at the time his business failed in January 2008, including business debts for which he was personally liable and credit card obligations.[5] [Mr. Leonard Dep. 33-39.] Thus, as of the month prior to the transfer of the Debtor's interest in the North Carolina Property, the Debtor was in a distressed financial

---

[5] As noted, the parties stipulated that "[o]n the Petition Date, the Debtor's liabilities exceeded his total assets by $180,575.69." The Court generally assumes that the parties mean what they say when they enter into a written stipulation of facts. A reference to the "Debtor's liabilities" is taken to mean debts that the Debtor is personally obligated to pay. Nevertheless, Ms. Leonard argues in her Response that, although the Debtor's wholly owned business entity was not paying its debts, "the Plaintiff also missed the testimony that Mr. and Ms. Leonard were current on their home mortgage and other living expenses at the time of the Chapter 7 filing." Ms. Leonard pointed to no specific testimony or other evidence in the record to support this statement. A conclusory statement such as that made by Ms. Leonard, without support in the record, is not sufficient to defeat a motion for summary judgment. Ms. Leonard also argues that many of the liabilities listed in the Debtor's Schedules are debts of John Leonard Construction, Inc. and not personal obligations of the Debtor. Based on Mr. Leonard's testimony, un-contradicted by other evidence in the record, the Court finds that Mr. Leonard's scheduled liabilities are his personal obligations. [Mr. Leonard Dep. 33-39.]

condition. The Debtor's Statement of Financial Affairs does not indicate any transfers during the year prior to the filing of this case that would impact the Court's analysis. From these facts, the Trustee argues that the Debtor's financial condition was substantially similar on February 19, 2008, the date of transfer of the North Carolina Property, to the Debtor's financial condition on the Petition Date, and that the Debtor was insolvent as of the date of transfer of the North Carolina Property.

The Court agrees. In this case, the Debtor has admitted that he was insolvent within the meaning of section 548(a)(1)(B) on the Petition Date. The relevant date for purposes of section 548(a)(1)(B) is the date of transfer of the North Carolina Property, only ten (10) weeks prior to the Petition Date. The Court concludes, based on the evidence the Trustee points to, that the Debtor's financial condition did not change during the short period from the date of transfer of the North Carolina Property to the Petition Date, and the Debtor was in fact insolvent on February 19, 2008. The fourth, and last, element of section 548(a)(1)(B) is satisfied.

Accordingly, the Trustee is entitled to summary judgment on her cause of action against Ms. Leonard under section 548(a)(1)(B).

2.    Section 548(a)(1)(A)

Alternatively, the Trustee argues that the transfer by the Debtor of his one-half interest in the North Carolina Property to Ms. Leonard was fraudulent within the meaning of section 548(a)(1)(A).

"Because a debtor is not likely to testify that he had the requisite intent to defraud creditors, the intent to hinder, delay, or defraud can be inferred from extrinsic evidence and the presence of badges of fraud." *Bakst v. Clarkston (In re Clarkston)*, 387 B.R. 882, 887 (Bankr. S.D. Fla. 2008) (citation omitted). "Badges of fraud include: (1) a relationship between the

debtor and the transferee; (2) lack of consideration for the conveyance; (3) insolvency or indebtedness of the debtor; (4) the transfer of the debtor's entire estate; (5) reservation of benefits, control or dominion by the debtor; (6) secrecy or concealment of the transaction; and (7) pendency or threat of litigation at the time of the transfer. While a single badge of fraud may simply raise suspicion, the presence of several badges of fraud, when considered together, may form the basis for a finding of actual fraud." *Id.* (citation omitted).

The transfer of the Debtor's one-half interest in the North Carolina Property was to the Debtor's spouse at a time when he was insolvent, facts that typically support a finding of actual fraudulent intent. The Court has found that in making the exchange of his interest in the North Carolina Property for his wife's interest in the Florida Property, the Debtor received only about one-third of the value that he gave. This, again, indicates actual intent under section 548(a)(1)(A). The Debtor concealed the transfer of his one-half interest in the North Carolina Property. He did not list the transfer in his Statement of Financial Affairs. Nor did he disclose the transfer when asked about it by the Trustee during his meeting of creditors under section 341. Based primarily on these facts, the Court previously entered judgment denying the Debtor his discharge. In ruling on denial of the Debtor's discharge, the Court also found that at the time of the transfer in question the Debtor was being pursued by his creditors. The Court found no evidence in the record to contradict the foregoing. The facts presented in this case indicate an actual intent to hinder, delay or defraud creditors. Accordingly, the Trustee is entitled to summary judgment on her cause of action against Ms. Leonard under section 548(a)(1)(A).

13

      b.      *Count V - Sale in lieu of partition pursuant to N.C. Gen. Stat. § 46-22*

The Trustee requests an order of this Court, pursuant to section 46-22, North Carolina General Statutes, finding that the North Carolina Property is indivisible and not subject to partition and authorizing the sale of the North Carolina Property.

Section 46-22 provides:

(a) The court shall order a sale of the property described in the petition, or of any part, only if it finds, by a preponderance of the evidence, that an actual partition of the lands cannot be made without substantial injury to any of the interested parties.

(b) "Substantial injury" means the fair market value of each share in an in-kind partition would be materially less than the share of each cotenant in the money equivalent that would be obtained from the sale of the whole, and if an in-kind division would result in material impairment of the cotenant's rights.

(c) The court shall specifically find the facts supporting an order of sale of the property.

(d) The party seeking a sale of the property shall have the burden of proving substantial injury under the provisions of this section.

§ 46-22 N.C. Gen. Stat. (2009).

The parties stipulated that the North Carolina Property is a single family home that cannot be subdivided and that the sale of a one-half undivided interest in the North Carolina Property would realize significantly less for the estate than the sale of the entire interest in the North Carolina Property. [Joint Stip. of Facts ¶¶ 4-5.]  Ms. Leonard did not respond to this portion of the Motion.  Based on the parties' stipulation, and on Ms. Leonard's failure to respond, the Trustee has established that the estate would suffer "substantial injury."  The Trustee is entitled to summary judgment against Ms. Leonard as to Count V of the Amended Complaint and the Court will enter judgment consistent with that requested in Count V.[6]

---

[6] In the Amended Complaint, the Trustee seeks relief against Macon Bank including an order of the Court to the effect that the estate holds a one-half interest in the North Carolina Property free of any lien, claim, or interest of

c.      *Count VI – Sale of real property pursuant to section 363(h)*

The Trustee requests an order authorizing the sale of the estate's interest and Ms.

Leonard's interest in the North Carolina Property pursuant to 11 U.S.C. § 363(h), which states:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if--
>
>   (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
>   (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
>   (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
>   (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

First, the Court must determine whether partition of the North Carolina Property between

the estate and Ms. Leonard is impracticable.  "Where property is a single family residence, there

is no practicable manner of partition other than a sale and division of the proceeds."  *In re*

*Griffin*, 123 B.R. 933, 935 (Bankr. S.D. Fla. 1991).  It is undisputed that the North Carolina

Property is a single family home that cannot be subdivided. [Joint Stip. of Facts ¶ 4.]  Thus, the

Court finds that partition in kind of the North Carolina Property is impracticable.

Second, the Court must determine whether the sale of the estate's undivided one-half

interest in the North Carolina Property would realize significantly less for the estate than a sale

free of Ms. Leonard's interest with the net proceeds distributed one-half to Ms. Leonard and one-

---

Macon Bank.  The relief granted herein is subject to entry of one or more orders and/or judgments addressing the rights of Macon Bank.

half to the estate.  Ms. Leonard's undivided one-half interest in the North Carolina Property "chills any prospective purchase of the estate's one-half interest."  *Bakst v. Baldwin (In re Baldwin)*, 2007 Bankr. LEXIS 4287, *12 (Bankr. S.D. Fla. Dec. 14, 2007).  Therefore, the Court finds that the estate would realize significantly more from a sale free of Ms. Leonard's interest.

Third, the Court must determine whether the benefit to the estate of a sale of the North Carolina Property free of Ms. Leonard's interest outweighs the detriment, if any, to Ms. Leonard. "In determining whether the benefit to the estate outweighs the detriment to the co-owner, the Court must consider the economic and emotional detriment which the co-owner would face."  *In re Griffin,* 123 B.R. 933, 936 (Bankr. S.D. Fla. 1991) (citations omitted).  Here, Ms. Leonard will receive proceeds from the sale equal to one half of the net sale price.  11 U.S.C. § 363(j). The North Carolina Property is not Ms. Leonard's homestead and so she will not be denied her principal residence.  The Court finds that the benefit to the estate of realizing on this substantial asset outweighs any harm to Ms. Leonard.

Fourth, it is undisputed that the North Carolina Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.  [Ms. Leonard Dep. 42-43.]

Accordingly, the Trustee is entitled to summary judgment against Ms. Leonard as to Count VI of the Amended Complaint and the Court will enter judgment consistent with that requested in Count VI.[7]

---

[7] The relief granted herein is subject to entry of one or more orders and/or judgments addressing the rights of Macon Bank.

Accordingly, it is

ORDERED AND ADJUDGED that the Motion [DE 92] is GRANTED as set forth above.  The Court will enter a separate judgment in favor of the Trustee consistent with this Order.


Copies Furnished To:

Michael R. Bakst, Esq.
Patrick S. Scott, Esq.
Frank P. Delia, Esq.
John B. Culverhouse, Esq.
Heather L. Ries, Esq.
U.S. Trustee

*Michael R. Bakst, Esq. is directed to serve a conformed copy of this Order on all interested parties not listed above and to file a certificate of service.*